UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA BASHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15 CV 30 CDP |
| | ) | |
| MIDLAND FUNDING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before me on cross-motions for summary judgment.[1]

Plaintiff, proceeding *pro se*, brings claims under the Fair Debt Collections

Practices Act (FDCPA), the Telephone Consumer Protection Act (TCPA), and the

Fair Credit Reporting Act (FCRA)[2] challenging debt collection activities

undertaken by defendants.[3]  For the following reasons, defendants are entitled to

judgment as a matter of law on all claims asserted against them, and plaintiff's

claims are dismissed with prejudice.

---

[1] In 2015 this case was transferred to California as part of multidistrict litigation proceedings (MDL Docket 2286).  ECF 30.  It was remanded to this court in December 2020.  ECF 38.

[2] Some of plaintiff's claims were dismissed as set out in my prior orders dated June 8, 2015 and June 11, 2015.  ECF 24, 27.

[3] Defendants do not dispute that they are debt collectors within the meaning of the statutes at issue in this case.

## **Background Facts**

This case arises out of three debts owed by plaintiff – two involving Chase Bank (Chase 1138 and Chase 8658) and one involving Barclays Bank (Barclays 5943). These accounts were all purchased by Midland Funding between 2010 and 2012 and placed with Midland Credit Management for servicing and collection. Midland Funding still owns all three accounts, but it is undisputed that Midland Funding "has no employees and did not attempt to collect on any of plaintiff's accounts." ECF 54-1 at 1.

Plaintiff alleges that, beginning in 2011, she was contacted "daily" at home and work about the debts, and that defendants called her family members about her debts, too. She claims she sent "cease and desist" letters to defendants in 2013 and that she requested validation of the debts and "proof of an unbroken chain of title," and when defendants did not respond to her letters she told them "she considered the matter closed and any further collection calls she would prosecute for the violations." Plaintiff claimed that she settled these debts with her creditors based on her attempts to effectuate an accord and satisfaction under Missouri law.[4]

---

[4] Her evidence of these attempts appears in the record at ECF 50 and consists of letters she wrote to her creditors claiming that she is unable to pay her debt and offering to settle her account by paying a fraction of what she owes and stating that the cashing of the check would constitute full settlement of the debt. ECF 50 at Ex. I(B) and Ex. VI(A). The copies of the checks attached to these letters are written on an account in the business name of Poor Man's Accounting, a business owned by plaintiff, and bear plaintiff's signature. Plaintiff then sent follow-up letters thanking her creditors for settling her accounts by cashing her checks.

Chase 1138 Account

On February 2, 2010, Midland Funding purchased plaintiff's Chase 1138 account and assigned it to Midland Credit for collection.  ECF 54-1 at 2.  Midland Credit contacted plaintiff by telephone and letter about the Chase 1138 account, with the last letter dated October 21, 2010.  ECF 54-1 at 2.  It avers that it never contacted her by phone regarding the Chase 1138 account after November 26, 2013.  ECF 54-1 at 2.  Plaintiff asserts that a Midland representative called her at work in September of 2013, used profanity, and threatened to garnish her wages if she did not pay.[5]  Plaintiff alleges that a customer at work overhead the conversation,[6] and that calls "continued through the end of November 2013" by

---

Plaintiff's attempts at an accord and satisfaction were unsuccessful as a matter of Missouri law because her debts were liquidated and there is no evidence they were disputed.  *See Clark v. Traders Ins. Co.*, 951 S.W.2d 750, 753 (Mo. Ct. App. 1997) (accord and satisfaction only available if debt is unliquidated or in dispute); *In re Kister*, 453 B.R. 755, 759 (Bankr. E.D. Mo. 2011) ("A debt that is readily calculable, or readily determinable is liquidated debt, regardless of whether the debtor disputes the obligation.") (cleaned up).  Therefore, to the extent plaintiff argues she did not owe the underlying debts based on settlement achieved through accord and satisfaction, she is wrong.

[5] She does not allege which account she was contacted about.

[6] In an attempt to prove this allegation, plaintiff offers a "To Whom It Concerns" statement from Teddy Parker dated September 2, 2013.  ECF 50 at Ex. XVIII(A).  Mr. Parker asserts that while he was waiting to get his taxes done at E-Fordable Tax Service (plaintiff's place of business), he overheard loud and abusive phone calls from an unidentified debt collector who claimed he would not stop calling until he was paid.  As will be discussed below in connection with all the statements proffered by plaintiff, this statement is not admissible evidence that the Court can consider on summary judgment, as the statement was not made under oath or upon penalty of perjury.  It is also not probative, as Mr. Parker did not identify the caller and never stated that the debt collector was calling about the underlying debts at issue in this case.  In addition, plaintiff claims that Mr. Parker is now deceased.

Midland.

Midland Credit avers that it did not own or operate dialing equipment that uses random or sequential number generators to place telephone calls when it placed calls to plaintiff regarding the Chase 1138 account.  ECF 54-1 at 2. Midland Credit reported the Chase 1138 account as disputed to the credit reporting agencies from September 16, 2010 until May 16, 2016, when the account was deleted from plaintiff's credit history (referred to as deleting the tradeline).  ECF 54-1 at 2.  There is no evidence in the record that plaintiff reported the Chase 1138 account as disputed to the credit reporting agencies.

Chase 8658 Account

Midland Funding purchased plaintiff's Chase 8658 account on May 14, 2012 and assigned it to Midland Credit for collection.  ECF 54-1 at 2-3.  Midland Credit contacted plaintiff by phone and letter about the account, with the last letter dated March 21, 2013.  ECF 54-1 at 3.  There is no evidence in the record that plaintiff disputed the Chase 8658 account with a credit reporting agency.  ECF 54-1 at 3. Midland Credit reported the account as disputed to the credit reporting agencies from July 29, 2013 until April 7, 2014, when the account was deleted from the tradeline.   ECF 54-1 t 3.  Midland Credit avers that it "does not now own or operate, and did not own or operate at the time the telephone calls were placed regarding the Chase 8658 Account, dialing equipment that uses random or

4

sequential number generators to place telephone calls." ECF 54-1 at 3.

On June 24, 2013, Midland Credit referred the Chase 8658 account to defendant Gamache & Myers (Gamache), a law firm, for collection. ECF 54-1 at 3. Gamache sent plaintiff a letter on June 27, 2013 advising her that the account had been referred to it for collection. ECF 54-2 at 2. The letter also stated the amount of the debt, the creditor, and advised her that the debt would be assumed valid unless disputed within 30 days. ECF 54-2 at 2. The letter further advised plaintiff that if she timely disputed the debt, Gamache would obtain verification of the debt and, if requested, the name and address of the original creditor. ECF 54-2 at 2. On July 5, 2013, plaintiff sent a facsimile to Gamache requesting verification of the Chase 8658 account. ECF 54-2 at 2. Gamache sent plaintiff a validation of debt letter on July 31, 2013, which included a blank credit agreement and an affidavit attesting to the sale of plaintiff's Chase account. ECF 50 Exhs. VI(B), VI(C), VI(D). Plaintiff alleges that this was insufficient documentation evidencing the debt. Plaintiff alleges that Gamache then began contacting her at work and her family members about her debt. Gamache avers that it never telephoned plaintiff with equipment using a random or sequential number generator or filed a report with any credit agency on plaintiff's Chase 8658 account.[7] ECF 54-2 at 2, 4.

---

[7] Gamache also avers that "its records do not demonstrate that its employees harassed; misled; deceived; used any false, deceptive, or misleading representations; or communicated in any way with Plaintiff or any third parties in violation of the Fair Debt Collection Practices Act in any

On November 18, 2013, Gamache filed a lawsuit in Crawford County

Circuit Court on Midland's behalf to recover the unpaid balance on the Chase 8658

account (Case Number 13CF-AC 00640).  ECF 54-2 at 2.  Attached to the state

court petition was an affidavit attesting to the details of plaintiff's unpaid account

balance and an account statement in plaintiff's name.  ECF 54-2 at Ex. B-1.  On

March 20, 2014, Midland, by and through Gamache, dismissed the case without

prejudice.  ECF 54-2 at 2.

### Barclays 5943 Account

Midland Funding purchased plaintiff's Barclays 5943 account on December

14, 2012, and assigned it to Midland Credit for collection.  ECF 54-1 at 3.

Midland Credit contacted plaintiff by telephone and letter about the Barclays 5943

account, with the last letter dated August 23, 2013.  ECF 54-1 at 3.  Midland Credit

avers that it never contacted plaintiff by telephone about the Barclays 5943 account

after September 11, 2013, and that it never contacted her about the Barclays 5943

account with dialing equipment that uses random or sequential number generators

to place telephone calls.  ECF 54-1 3-4.  There is no evidence in the record that

plaintiff reported the Barclays 5943 account as disputed to a credit reporting

---

way."  ECF 54-2 at 4.  Midland similarly avers that its "records do not demonstrate that its
employees communicated improperly or inappropriately in any way with Plaintiff or any third
parties in regard to" her accounts.  ECF 54-1.

agency.  ECF 54-1 at 4.  Midland Credit reported the account as disputed to the credit reporting agencies from January 16, 2014 until December 17, 2014, at which time the tradeline was deleted.  ECF 54-1 at 4.

On November 26, 2013, Midland Credit assigned the Barclays 5943 account to Gamache for collection.  ECF 54-1 at 4.  A few days later, Gamache sent plaintiff a letter about the debt, advising her that it had been referred to its office for collection and stating the amount of the debt and the name of the creditor.  The letter also informed plaintiff that unless she disputed the debt in writing within 30 days, it would be assumed valid, and that if so requested within that 30-day window, Gamache would provide her with verification of the debt.  ECF 54-2 at 3. On January 6, 2014, Gamache sent plaintiff a letter offering to settle the Barclays 5943 account.  ECF 54-2 at 3.  Plaintiff responded to Gamache by facsimile, requesting verification of the Barclays 5943 account.  ECF 54-2 at 3.  Gamache responded on January 14, 2014, by providing a copy of her account statement. ECF 54-2 at 3, Ex. B-2.  Plaintiff alleges that this documentation was insufficient to validate the debt.

Plaintiff claims that Gamache then began calling her at work and at home, and called her family members about the Barclays debt.  Plaintiff alleges that the debt collectors who called her at work were loud, rude, and used foul language that could be overhead by customers.  Gamache avers that it never contacted plaintiff

using dialing equipment that uses a random or sequential number generator or reported anything about the Barclays 5943 account to any of the credit reporting agencies.  ECF 54-2 at 4.

On March 24, 2014, Gamache, on behalf of Midland Funding, filed a lawsuit against plaintiff in Crawford County state court to recover the unpaid balance on the Barclays 5943 account (Case Number 14CF-AC0013).  ECF 54-2 at 3-4, Ex. B-3.  Attached to the March 24, 2014 petition was an affidavit and account statement in plaintiff's name.  ECF 54-2 at Ex. B-3.  Plaintiff sent Gamache a letter on June 9, 2014, about accessing her credit report.  ECF 54-2 at 4.  Gamache responded on June 11, 2014, that it accessed her credit information in aid of collecting a debt.  ECF 54-2 at 4.  Midland Bank dismissed the suit over the Barclays 5943 account without prejudice on November 4, 2014.  ECF 54-2 at 4.

## Plaintiff's Allegations

Plaintiff originally brought this action against defendants in state court in 2015, alleging numerous violations of state and federal law.  Defendants removed the case and moved to dismiss it.  After the Court ruled on defendants' motion to dismiss, (ECF 24, 27), plaintiff's remaining claims against all defendants in this case are brought under the FDCPA, 15 U.S.C. § 1692 et seq., the FCRA, 15 U.S.C. § 1681 et seq., and the TCPA, 47 U.S.C. § 227.  Plaintiff claims defendant Midland Credit violated the FDCPA by calling her at work, threatening to garnish

her wages, not validating her debts, continuing collection efforts without verification, calling her when she told them to contact her only in writing, using foul language, calling her repeatedly, not disclosing its identity, and contacting her family members about her debt. Plaintiff alleges that defendant Gamache violated the FDCPA by telling plaintiff they were going to place liens on her property in February of 2014, contacting her at work, communicating by telephone instead of in writing, using abusive and oppressive conduct, contacting her before 8 a.m. and after 9 p.m., using foul language, calling her repeatedly, and not disclosing its identity. Plaintiff complains that defendant Midland Funding violated the FDCPA by providing evidence of the debt from Barclays and Chase, not "their own" records, and by acting "willfully and callously."

Plaintiff' also alleges Gamache violated the FDCPA by falsely representing that it had original documentation establishing the existence of the debts and for its alleged failure to "substantiate" the debt and "prove that any one of the Defendants is the holder in due course to collect the alleged Debt." Plaintiff also complains that Gamache, as a law firm, "should know enough to follow state and federal laws" because an attorney "implies more authority than a debt collector." Plaintiff alleges that Gamache "precipitously filed illegal documents . . . in order to receive a judgment," and that it should have "readily determined that the alleged debt was in dispute." Plaintiff further asserts that Gamache did not properly validate the

debt and that it "had no legal standing to bring a claim as they have not been honest and forthright in their pursuit, when presenting themselves as the attorney of record but communicating as a collection agency for their own benefit."

Plaintiff claims that all defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), by reporting to and communicating with credit reporting agencies and "other persons" about her debts without reporting that the debts were disputed, failing to conduct an investigation after receiving notice that the debts were disputed, failing to review all relevant information, failing to conduct an investigation as to the accuracy of the information being reported to the credit agencies, reporting false, inaccurate, and incomplete information, and reporting a past due balance when plaintiff allegedly did not owe the debt.

Plaintiff alleges that all defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by contacting her and her family members on their cellular telephones, calling multiple times in one day after plaintiff requested she not be contacted by phone, repeatedly calling, and calling her using a pre-recorded message.

<u>Materials Submitted in Support of Summary Judgment</u>

To support her claims on summary judgment, plaintiff offers numerous documents which are largely incomprehensible. For example, she offers what she claims are telephone records, but there is no explanation of what these records

10

even purport to show.  Plaintiff (and/or her daughter Elisha Ford) have created

what appear to be summary sheets purporting to show "lost business income" for

E-fordable Tax Service as an alleged result of defendants' actions, but E-Fordable

is not a party to this case and is not a business even owned by plaintiff.[8]  *See* ECF

50 Ex. XII(C).  Plaintiff includes what she identifies only as "answered and not

ans. calls MCM marked-1," which is an document entitled "Sheet15" listing dates,

times, telephone numbers, and occasional random comments about the calls.  ECF

50 Ex. XVII(E).  There is no indication of who created this document or whether it

qualifies as admissible evidence.  These are but several examples, as virtually all of

the documents submitted by plaintiff suffer from similar, multiple infirmities.

Nevertheless, the Court has reviewed them all and, where possible, given plaintiff

the benefit of all reasonable inferences to be drawn from them.  They do not,

however, demonstrate that any triable issues remain in this case.

Plaintiff was not deposed in this case, and she offers no testimony of her

---

[8] After plaintiff pled guilty before me for tax fraud, *United States v. Basham*, 4: 10 CR118 CDP, her daughter Elisha Ford took over plaintiff's business, Poor Man's Accounting, and named it E-Fordable Tax Service.  To the extent plaintiff is claiming this sheet shows her own lost income, it appears at odds with representations made by plaintiff and Ford to plaintiff's probation officer and to me in plaintiff's criminal case.  *Compare* ECF 62 in Case No. 4:10CR118 CDP (denying plaintiff's request for early termination from supervised release because "her crime was very serious, and I continue to be concerned that she is a risk because she still works in an accounting business.  I recognize that Basham's employer (her daughter [Ford]) has acknowledged understanding the risk, and that Basham reports to her Probation Officer that she is working as a receptionist and is not actually preparing tax returns") *with* ECF 50 Ex. XVII(A) (Ford stating that plaintiff is a "contractor out of my office, and is paid a percentage based on the client flow in my office" and that "her hourly rate of pay was $150 hour on non-IRS matters, and $250.00 an hour on IRS matters.")

own to support of her claims.  Plaintiff has filed statements made by three non-party witnesses: her two daughters (Elisha Ford and Myranda Evans); and, a customer of E-fordable Tax Services, Teddy Parker.  ECF 50 Exhs. XXVIII(A), XII(A), XVII(A).   These statements, however, are not admissible evidence and cannot be considered by the Court on summary judgment as none of these statements are made under oath or penalty of perjury.  *See Banks v. Deere*, 829 F.3d 661, 667–68 (8th Cir. 2016) ("Although Rule 56 [of the Federal Rules of Civil Procedure], as amended in 2010, no longer requires a formal affidavit, an unsworn declaration or statement substituted for a sworn affidavit must still meet important statutory requirements . . . [and] under 28 U.S.C. § 1746, an unsworn declaration or statement must be written, signed, dated, and certified as true and correct "under penalty of perjury.").

Ford "swears" that her statement is true (although, importantly, she never states that she was placed under oath), and her statement, entitled "Affidavit," is notarized.  However, there is no proof that Ford swore to the truth of its contents under oath before an officer (such as the notary) authorized to administer oaths.  "There is, of course, no affidavit unless there was an actual swearing to the facts which it purported to affirm under oath."  *See Reid v. U.S.*, 2010 WL 3829397, at *5–6 (E.D. Mo. Sept. 23, 2010) (cleaned up).  The Court has found no authority

that an unsworn[9] statement may be considered an affidavit merely because a notary public's seal has been affixed thereto.  *See id.*  In this case, Ford's statement lacks a notary's jurat, which would indicate that that she subscribed and swore to the document in the notary's presence after being placed under oath.  *See id.* (jurat typically says "Subscribed and sworn to before me this ___ day of [month], [year]," and certifies (among other things) that the officer administered an oath or affirmation to the signer, who sworn to or affirmed the contents of the document). Instead, the notary only certified that Ford personally appeared and gave "the above Affidavit as her free and voluntary act and deed."

Although Ford's statement was not made under oath, it could have been considered as admissible evidence if she had signed it "under penalty of perjury" and verified it as true and correct.  See 28 U.S.C. § 1746.  As she did not sign it "under penalty of perjury," her "affidavit" also does not satisfy the requirements for admitting an unsworn declaration under 28 U.S.C. § 1746.

The same analysis applies to the statements of Parker and Evans, neither of whom swore under oath that the contents of their statements were true before a duly authorized officer or signed their statements "under penalty of perjury."  Like Ford's statement, the mere fact that Evans' statement bears a notary public's seal

---

[9] "Sworn" here means she was actually placed under oath.  Merely stating that she "swears" her statement is true does not mean Ford has made a sworn statement.

does not mean that it was made under oath, as her statement also lacks a jurat or any indication that she was placed under oath before signing it and swore to the truthfulness of its contents. Plaintiff offers no admissible testimony in support of her claims and cannot stand on the mere allegations made in her pleadings to survive summary judgment.[10]

In contrast, defendants have offered signed declarations made "under penalty of perjury" and verified as true and correct in conformity with the requirements of 28 U.S.C. § 1746 from witnesses with personal knowledge attesting to the facts on behalf of the Midland defendants and Gamache. ECF 54-1 and 54-2. These declarations meet the requirements for admissibility of evidence under Federal Rule of Civil Procedure 56 and have been considered by the Court.

Defense counsel also submitted a declaration in conformity with Fed. R. Civ. P. 56 and the requirements of 28 U.S.C. § 1746 attesting to plaintiff's

---

[10] The Court cannot liberally construe inadmissible evidence as admissible evidence just because plaintiff is representing herself in this action, nor is this "unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *Pfeil v. Rogers*, 757 F.2d 850, 859 (8th Cir. 1985). Here, plaintiff is well-aware of the importance (as well as the consequences) of being placed under oath and subjecting oneself to the penalties of perjury before offering testimony to this Court, as demonstrated by her guilty plea before me in her criminal case *United States v. Angela Basham*, Case Number 4:10CR118 CDP. The Court cannot conclude that plaintiff's failure to offer admissible testimony is "unintentional," just as it cannot conclude that requiring testimony to be submitted either under oath or under penalty of perjury is a "technical, non-substantive" requirement. Although plaintiff now claims that she has had "30 strokes and brain surgery, [her] sight is very poor, [and] she requires assistance in providing any documentation," ECF 64 at 33, she has never filed a motion for appointment of counsel with this Court or sought a continuance for health-related reasons and cannot now escape compliance with the Federal Rules of Civil Procedure based on these unverified assertions.

responses to discovery requests in this case.  ECF 54-3.  When asked to provide all documents supporting her claims in this action, plaintiff's response was "see 1." ECF 54-3 at 6.  Presumably this refers to her response to document request number 1, which asked for documents used to respond to interrogatories.  Her handwritten response to this request reads, "will give what I have, outside of records sent in MDL including [illegible] records – thumb drive containing all cellular records, Bates labels you gave."   ECF 54-3 at 6.  When asked for documents supporting any contention that she was called by the Midland defendants using equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, she responded, "caselaw." ECF 54-3 at 7.  When asked the same question with respect to Gamache, she responded, "Do not," presumably meaning that she "does not" make such a contention.  ECF 54-3 at 8.  She also responded that she "do[es] not" contend that Gamache telephoned her using an artificial or prerecorded voice. ECF 54-3 at 8.  When requested to produce all documents supporting her assertion that the Midland defendants telephoned her using an artificial or prerecorded voice, she responded, "caselaw on equipment you stated used."  ECF 54-3 at 8.  These responses were signed by plaintiff on October 28, 2021.  ECF 54-3 at 10.  The Court has considered plaintiff's responses to discovery requests in its determination of whether summary judgment should issue.

## Standards Governing Summary Judgment

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

16

## Discussion

### FDCPA Claims

Plaintiff's FDCPA claims fail as a matter of law because she offers no evidence that the underlying debts were primarily for personal, family, or household purposes.  The FDCPA allows "consumers who have been subjected to unfair practices by third-party debt collectors to recover damages, attorney fees, and costs." *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. 1998) (citing 15 U.S.C. § 1692k(a)).  The FDCPA applies only to collection activity arising from a "debt," which the statute defines as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5) (emphasis added); *Duffy*, 133 F.3d at 1123 (holding that the FDCPA "broadly defines debt as 'any obligation' to pay arising out of a consumer transaction").  "The FDCPA 'characterizes debts in terms of end uses.'"  *Noe v. Chastain*, 2019 WL 1560464, at *2 (W.D. Mo. Apr. 10, 2019) (quoting *Micks v. Gurstel Law Firm, P.C.*, 2019 WL 418850, at *7 (D. Minn. Feb. 1, 2019)).  Under the FDCPA, "[t]he relevant time for determining the nature of the debt is when the debt first arises."  *Zwicky v. Carlson & Assocs., Ltd.*, 2011 WL 6203058, at *1 (D. Minn. Dec. 13, 2011) (internal quotation marks

omitted).

Although plaintiff moves for summary judgment on her FDCPA claims, she offers no evidence at all as to the nature of the underlying debts, much less any evidence which demonstrates that they are consumer debts as required by the FDCPA. *See* 15 U.S.C. § 1692a(5). In opposition to plaintiff's motion and in support of their own, defendants contend that the total absence of proof on this essential element of plaintiff's FDCPA claims means that they are entitled to judgment as a matter of law on all FDCPA claims asserted against them. I agree.

The only evidence in the record demonstrates that the debts were likely related to plaintiff's business, Poor Man's Accounting, as the checks plaintiff sent to the debtors in her failed attempt to settle the debts were from the business account of Poor Man's Accounting and were not personal checks. ECF 50 at Exh. I(B) and VI(A). "[T]o state a claim under the FDCPA, the debt at issue must arise for personal, not business, purposes." *Whitledge v. Carrington Mortg. Servs., LLC*, No. 15-2686, 2015 WL6561731, at *7 (D. Minn. Oct. 5, 2015), report and recommendation adopted, No. 15-2686, 2015 WL 6561493 (D. Minn. Oct. 29, 2015); *Zwicky*, 2011 WL 6203058, at *1 (debt incurred for commercial property is not a consumer debt under FDCPA). It is plaintiff's burden to produce sufficient evidence to show that her debts arise from consumer debt, and her complete failure to offer any evidence on an essential element of her claim renders summary

judgment for the defendants appropriate.  *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579-85 (7th Cir. 2019) (affirming summary judgment in favor of defendant debt collectors where plaintiff provided no admissible evidence that debt incurred was consumer debt).  "[I]f the debt does not arise out of a consumer transaction, the FDCPA does not apply to the collection of that debt as an initial matter, and all of Plaintiff's claims under the FDCPA fail." *Benbrooks v. Voigt, Rode, & Boxeth, LLC*, 2015 WL 4601193, at * 2 (D. Minn. July 30, 2015).  Defendants' motion for summary judgment on plaintiff's FDCPA claims will be granted, and plaintiff's motion for summary judgment will be denied.

TCPA Claims

To prevail on her claims under the TCPA, plaintiff must demonstrate that: (1) a call was made; (2) the caller used an automatic telephone dialing system (ATDS) or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express consent of the recipient. *See Ueckert v. State Farm Bank, F.S.B.*, 2017 WL 3981136, at *1 (W.D. Ark. Sept. 11, 2017); 47 U.S.C.A. § 227(a)(1).  Although plaintiff alleged that defendants violated the TCPA by using both an ATDS and an artificial or prerecorded voice, in her responses to discovery requests plaintiff admits that defendant Gamache never contacted her using an artificial or prerecorded voice or an ATDS.  ECF 54-3 at 8.  In light of plaintiff's admissions,

19

Gamache is entitled to summary judgment on plaintiff's claims that it violated the TCPA.

As for plaintiff's remaining claims brought under the TCPA, she offers no admissible evidence that the Midland defendants contacted her using an ATDS or an artificial or prerecorded voice.  With respect to claims brought under the ATDS provision of the TCPA, the United States Supreme Court recently held "that a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called."  *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (U.S. Apr. 1, 2021).  If the system in question does not use a random or sequential generator to either store or produce phone numbers to be called, it is not an ATDS under the TCPA.  *Id.* at 1170.

In support of their motions for summary judgment, defendants have submitted admissible evidence that they never contacted plaintiff using telephone dialing equipment that uses random or sequential number generators.[11]  ECF 54-1 at 2-4 (Midland Credit);  ECF 54-2 at 2, 4 (Gamache).  Plaintiff submits no admissible evidence to controvert this.  Instead, she offers inadmissible statements

---

[11] There is no dispute that Midland Funding never contacted plaintiff to collect on any of plaintiff's debts.  ECF 54-1 at 1.  Rather, plaintiff argues that Midland Funding should be vicariously liable for the actions of Midland Credit and Gamache taken on its behalf.  ECF 58 at 12.

from her daughters who speculate that the calls must have been made using an ATDS or "spoofing," unidentified and unauthenticated documents purporting to be telephone records showing the nature of the calls, and unidentified, unauthenticated, and inadmissible documents purporting to summarize phone calls from defendants.  None of these documents are admissible for the reasons previously stated, and they do not create a triable issue of fact on the issue of whether plaintiff was contacted by defendants using an ATDS.

Nor does plaintiff's one-word reliance on "caselaw" in response to defendant's discovery requests on this issue turn an undisputed issue of material fact into a disputed one for summary judgment purposes.  In her brief in support of summary judgment, plaintiff relies on a case decided before *Duguid*, *Ramsey v. Receivables Performance Mgmt., LLC*, 507 F. Supp. 3d 912 (S.D. Ohio 2020), to support her contention that defendants used an ATDS to contact her.  As *Ramsey* used the statutory interpretation specifically rejected by the Supreme Court in *Duguid*, it does not support plaintiff's contention that an ATDS was used in this case.[12]

---

[12] The *Ramsey* court applied the Sixth Circuit's definition of ATDS, which found that a stored-number device qualifies as an ATDS "whether or not it uses a random or sequential number generator."  507 F. Supp. 3d at 918 (applying *Allan v. Pennsylvania Higher Educ. Assistance Agency*, 968 F.3d 567, 580 (6th Cir. 2020)).   This is no longer good law in light of *Duguid* and therefore, even if there was evidence in this case that defendants used the Noble system, this case does not demonstrate that the system is an ATDS after *Duguid*.  Notably, after it decided *Duguid*, the Supreme Court granted certiorari, vacated the judgment in *Allan*, and remanded the

Plaintiff gave a similar answer when asked to produce all documents supporting her assertion that the Midland defendants telephoned her using an artificial or prerecorded voice.  She responded only "caselaw on equipment you stated used."  ECF 54-3 at 8.  However, she does not identify the caselaw she relies upon to support this claim, and the cases plaintiff cites in her briefs discuss only automatic dialing systems, not whether any particular system uses an artificial or prerecorded voice.  These are different claims under the TCPA.  Once again plaintiff offers nothing more than inadmissible statements and documents to support her claims.  Her allegations are not evidence and do not establish that she is entitled to summary judgment as a matter of law.

In contrast, defendants have offered plaintiff's non-responsive answers to their discovery requests to demonstrate that plaintiff has no evidence to support her

---

case for further reconsideration in light of *Duguid*.  *See Allan v. Pennsylvania Higher Educ. Assistance Agency*, 141 S. Ct. 2509 (2021).

In their declarations in this case, defendants do not state which system or systems were used to contact plaintiff, only that they never contacted her by telephone dialing equipment that uses random or sequential number generators, a necessary feature of an ATDS after *Duguid*. Apparently, in the MDL Midland submitted a written statement of technology used to contact plaintiffs.  Plaintiff produced excerpts from this statement in support of summary judgment. ECF 50 Ex. XXXIV(A).  This statement describes various systems that were used to contact plaintiffs in the MDLs.  Even if this statement were complete and described the system or systems used to contact plaintiff in this case, there is no evidence that it contradicts what defendants have averred in this case – namely that they never contacted her using telephone dialing equipment that uses random or sequential number generators.  Thus, this evidence, even if considered, does not preclude summary judgment in favor of defendants.  The Court is mindful that the majority of discovery in the MDL preceded *Duguid* and may be of limited utility for that reason.

claims that she was contacted by an artificial or prerecorded voice in violation of the TCPA.  It is plaintiff's burden to establish all the elements of her claim, and here she offers no evidence that a triable issue remains on her TCPA's artificial voice claims.  Plaintiff's complete failure to offer any evidence on an essential element of her claim renders summary judgment for the defendants appropriate. "[I]f the nonmoving party must prove $X$ to prevail, the moving party at summary judgment can either produce evidence that $X$ is not so or point out that the nonmoving party lacks the evidence to prove $X$." *Bedford v. Doe*, 880 F.3d 993, 996-97 (8th Cir. 2018).  As plaintiff lacks any evidence to prove her TCPA claims, defendants' motion for summary judgment on plaintiff's TCPA claims will be granted, and plaintiff's cross-motion for summary judgment on her TCPA claims will be denied.

## FCRA Claims

In her amended complaint, plaintiff alleges that all defendants violated the Fair Credit Reporting Act by reporting to and communicating with credit reporting agencies and "other persons" about her debts without reporting that the debts were disputed, failing to conduct an investigation after receiving notice that the debts were disputed, failing to review all relevant information, failing to conduct an investigation as to the accuracy of the information being reported to the credit agencies, reporting false, inaccurate, and incomplete information, and reporting a

past due balance when plaintiff allegedly did not owe the debt.  Plaintiff's amended complaint asserts violations of 15 U.S.C. § 1681s-2(b).

In her summary judgment motion, however, plaintiff argues only that Midland Funding and Midland Credit violated the FCRA because Midland Credit furnished information to a credit reporting agency ("CRA") after it was notified that information was inaccurate.  (ECF 49 at 12).  Plaintiff also asserts that they violated 15 U.S.C. § 1681s-2(a)(1) and 15 U.S.C. § 1681s-2(a)(3). (ECF 49 at 12-13).  These claims were not brought in plaintiff's amended complaint.

Even if the Court assumes that plaintiff can bring FCRA claims not pleaded in her amended complaint, plaintiff's § 1681s-2(a) claims would still fail as a matter of law.  The FCRA regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information.  *See* 15 U.S.C. § 1681(b).  As part of this regulatory scheme, the FCRA imposes several duties on those who furnish information to consumer reporting agencies (CRAs). *See* 15 U.S.C. § 1681s-2.  Among these are duties to refrain from knowingly reporting inaccurate information, *see* § 1681s-2(a)(1), and to correct any information they later discover to be inaccurate, *see* § 1681s-2(a)(2). Consumers have the right to dispute any information reported to a CRA.  *See* 15 U.S.C. § 1681g(c)(1)(B)(iii); *see also* 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(a)(8). However, a consumer does not have a private right of action to enforce any

subsection of 15 U.S.C. § 1681s-2(a), including (a)(1) or (a)(2). *See Mendes v. JH Portfolio Debt Equities*, No. 4:19CV1501 CDP, 2019 WL 4860660, at *3 (E.D. Mo. Oct. 2, 2019); *Somlar v. Nelnet Inc.*, No. 4:16CV1037 AGF, 2017 WL 35703, at *4 (E.D. Mo. Jan. 4, 2017); *see also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (citing cases). The statute plainly restricts enforcement of § 1681s-2(a) to federal and state authorities. 15 U.S.C. § 1681s-2(d); *McWilliams v. Chase Home Fin., LLC*, No. 4:09CV609 RWS, 2010 WL 1817783, at *3 (E.D. Mo. May 4, 2010) ("[A]s § 1681s-2(d) indicates, enforcement of § 1681s-2(a) is limited to federal agencies and officials and state officials identified § 1681s."). Therefore, even if properly raised those claims fail as a matter of law.

"'[T]he FCRA does permit an individual to bring a claim under § 1681s-2(b) against a furnisher of information,' for failing in certain duties imposed on such furnishers *after* they receive a notice of dispute from a credit reporting agency." *Somlar*, 2017 WL 35703, at *5 (quoting *Drew v. Capital One Bank (USA) N.A.*, No. 1:16CV00095 SNLJ, 2016 WL 3402540, at *2 (E.D. Mo. June 21, 2016)) (alteration and emphasis in *Somlar*). "But notice of disputed information provided directly by the consumer to a furnisher does not trigger the duties of investigation under section 1681s-2(b)." *Id.* (internal quotation marks and citation omitted). A cause of action arises under § 1681s-2(b) only if the furnisher received notice from a CRA, not from the consumer, that the credit information is in dispute. *Id.*; *Foster*

*v. Exeter Fin. LLC*, No. 4:18CV1014 CDP, 2018 WL 6524007, at *2 (E.D. Mo. Dec. 12, 2018).

Gamache is entitled to judgment as a matter of law on plaintiff's § 1681s-2(b) claims because it is undisputed that it never credit reported on any of plaintiff's accounts.  ECF 54-2 at 4.  As such, it cannot be considered a "furnisher of information" subject to the provisions of the statute as a matter of law.[13]

As for the Midland defendants, the record is completely devoid of any evidence that plaintiff submitted a dispute on any of her debts directly to a CRA, that defendants received notice of a dispute from the CRA, or that they failed to investigate.  By contrast, defendants have submitted admissible, uncontroverted evidence demonstrating that they did *not* receive notice of a dispute from a credit reporting agency as to any of plaintiff's accounts. ECF 54-1 at 2, 3, 4.  Although plaintiff has submitted multiple documents showing that she disputed her debts with defendants, she offers no evidence that she notified any CRA of a dispute, or that any of the defendants received notice of a dispute from any CRA.  This absence of evidence is fatal to plaintiff's claims under § 1681s-2(b).  *See Bedford*, 80 F.3d at 996-97; *Echols v. Cavalry Portfolio Services, LLC*, No. 4:20CV1277 JAR, 2021 WL 426255, at * 2-*3 (E.D. Mo. Feb. 8, 2021).

---

[13] Plaintiff did not seek summary judgment against Gamache on any FCRA claims, prompting Gamache to alternatively argue that she had abandoned them.

For all of these reasons, plaintiff's FCRA claims fail as a matter of law. Defendants' motion for summary judgment on plaintiff's FCRA claims will be granted, and plaintiff's cross-motion for summary judgment will be denied.

## Conclusion

The undisputed evidence demonstrates that no material facts are genuinely in dispute and that defendants are entitled to judgment as a matter of law on all claims asserted against them in plaintiff's amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [53] is granted, and defendants shall have summary judgment on all claims asserted against them, and plaintiff's amended complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [49] is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to answer defendant's petition for summary judgment and correct errors in her summary judgment [65] is denied.

A Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of April, 2022.